Case 1:23-cv-03504-ALC   Document 44   Filed 09/27/24   Page 1 of 16

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _9/27/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIFT MARKETS GROUP, INC., <br><br> Plaintiff, <br><br> -against- <br><br> ALKEMI AI INC., *et al.*, <br><br> Defendants. | 23-cv-03504 (ALC) <br><br> **ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Shift Markets Group, Inc. ("Plaintiff") brings this suit against Defendants Alkemi AI Inc., Arkana Capital, and Ryan Breen ("Defendants") alleging: (1) conversion as against all Defendants, (2) breach of fiduciary duty as against Defendants Alkemi and Breen, (3) aiding and abetting breach of fiduciary duty as against Defendant Arkana, (4) fraud as against Defendants Alkemi and Breen, (5) aiding and abetting fraud as against Defendant Arkana, (6) civil conspiracy as against all Defendants, (7) breach of contract as against Defendant Alkemi, (8) breach of covenant of good faith and fair dealing as against Defendant Alkemi, and (9) unjust enrichment as against all Defendants. ECF No. 20 ("AC"). Defendants moved to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12. For the reasons discussed herein, the Court finds that Plaintiff has failed to carry their burden as to personal jurisdiction and Defendants' motions are **GRANTED** on those grounds. As such, the Court declines to consider the Parties' arguments as to whether Plaintiff has sufficiently pleaded their claims.

## BACKGROUND

### I. Procedural Background

Plaintiff filed the initial Complaint in this action on April 26, 2023. ECF No. 1. Defendants requested leave of this Court to file motions to dismiss the initial Complaint on

August 7th and 9th. ECF Nos. 12-13. In their response in opposition to Defendants' pre-motion conference letters, Plaintiff asked for leave to amend the initial Complaint. ECF Nos. 15-16. The Court granted leave to Plaintiff to amend the complaint and to Defendants to move for dismissal as requested. ECF No. 17. Plaintiff filed the operative Amended Complaint on September 5, 2023. ECF No. 20. Defendant Arkana Capital then moved to dismiss on October 26, 2023. ECF Nos. 30, 31 ("Arkana Mot."). Defendants Alkemi AI Inc. and Ryan Breen filed their joint motion to dismiss on October 27, 2023. ECF Nos. 34, 37 ("Alkemi/Breen Mot."). Plaintiff filed their opposition to both motions on November 10, 2023. ECF Nos. 40 ("Alkemi/Breen Opp."), 41 ("Arkana Opp."). Briefing concluded with Defendants' respective reply briefs submitted to the Court in mid-November. ECF Nos. 42 ("Alkemi/Breen Reply"), 43 ("Arkana Reply").

## II.     Factual Background

All facts recited herein are taken from Plaintiff's Amended Complaint, and, as is required at the dismissal stage, are taken as true exclusively for purposes of deciding the present motions.

Defendant Alkemi solicited investments from Plaintiff Shift Markets Group, Inc. sometime around late 2019/early 2020 in New York. AC at ¶ 22. In March 2020, Plaintiff and Alkemi, acting through their common corporate officer Defendant Breen, negotiated the terms of Plaintiff's investment and share allotment. *Id.* Plaintiff obtained the option to convert the shares received into Defendant Alkemi's Alkemi Token ("ALK") upon the creation or minting of the cryptocurrency. *Id.* The solicitation and negotiation of terms occurred over a series of calls, meetings, and presentations between Plaintiffs and Defendants Alkemi and Breen. *Id.* at ¶ 23. Defendants allegedly made representations at these meetings to Plaintiff that the invested funds would be put towards general working capital and primarily towards the creation and operation

of the "Alkemi Protocol," a project facilitating the listing of Alkemi's ALK Token onto a cryptocurrency exchange. *Id.*; *see also id.* at ¶ 32 (claiming that Defendants Alkemi and Breen made such alleged misstatements in written communications with Plaintiff's Chief Technology Officer in New York). Plaintiff also alleges that Defendants Alkemi and Breen claimed that the investment's "true value . . . would be in the ALK tokens and not the capital shares of Defendant Alkemi." *Id.* at ¶ 23.

The Parties, save Defendant Arkana, entered into a Simple Agreement for Future Equity ("SAFE" or "the Agreement") on June 1, 2020 under which Plaintiff invested $200,000 into Defendant Alkemi. *Id.* at ¶¶ 25, 28. *Inter alia*, the SAFE stated that the Defendant Alkemi was seeking to raise an aggregate of up to $200,000 from one or more investors," *id.* at ¶ 25, that Plaintiff would "pay the Purchase Amount to [Alkemi]," *id.* at ¶ 26, and that Alkemi would "use the net proceeds of the Purchase Amount for general working capital purposes." *Id.* at ¶ 27.

Plaintiff alleges that Defendant Breen, Alkemi's corporate officer, funneled the entire investment from Alkemi into Arkana Capital, a separate corporate entity established in January 2022 for which Breen also served as Executive Officer to "fund his own lavish lifestyle." *Id.* at ¶¶ 29-31. Plaintiff also alleges that, despite their statements that the ALK tokens would soon be listed on an exchange, Defendants Alkemi and Breen had terminated Alkemi's employees, halted work on the Alkemi Protocol, and shuttered operations on the ALK token business. *Id.* at ¶ 33-34; *see also id.* at ¶ 35 (claiming that the cryptocurrency wallet on Defendant Alkemi's website soon became nonfunctional and that no work was published on Alkemi Protocol's public blockchain after September 7, 2021).

Without knowledge of Defendant Alkemi and Breen's actions, Plaintiff exercised their contractual right to convert its shares in Alkemi into 1,333,333.33 ALK tokens. *Id.* at ¶ 36.

Plaintiff alleges that Defendant Alkemi and Breen's conduct resulted in Alkemi's undercapitalization and a steep decrease in the value of ALK tokens. *Id.* at ¶ 37. While Plaintiff was able to sell a small amount of the tokens following their discovery of Defendants' actions, the lion's share of the value of their tokens was negatively affected. *Id.* at ¶ 36. While Plaintiff demanded the return of their $200,000 investment, Defendants never refunded Plaintiff their money.

## LEGAL STANDARD

Rule 12(b)(2) mandates dismissal of an action against any defendant over whom a Court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A plaintiff opposing a Rule 12(b)(2) motion "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted). A civil plaintiff must therefore plead sufficient facts establishing "a *prima facie* showing" that personal jurisdiction exists. *Grand River Enters. Six Nations, Ltd. V. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (citation omitted). This *prima facie* showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks and citation omitted). This averment must provide "factual specificity necessary to confer jurisdiction" as mere "conclusory statements" are insufficient. *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). What's more, a reviewing Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

A Court reviewing a 12(b)(2) motion "may consider documents beyond the pleadings in determining whether personal jurisdiction exists." *Greatship (Ind) Ltd. v. Marine Logistics Sols.*

*(Marsol) LLC*, 2012 U.S. Dist. LEXIS 8231, at *5 (S.D.N.Y. Jan. 24, 2012) (citation omitted). Personal jurisdiction must also be established "with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

When considering a 12(b)(6) motion, a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement of relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficiently factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2 1059, 1067 (2d Cir. 1985). A reviewing court ought not dismiss a complaint where "enough facts to state a claim to relief that is plausible on its face" have been plead." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

## DISCUSSION

I.  **Personal Jurisdiction**

The Court must look first to the law of the forum state, here New York, to determine whether an exercise of specific personal jurisdiction over the defendants is permissible.[1] *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). Where the state law permits such exercise of jurisdiction, we must also determine whether this would comport with due process. *See Daimler AG v. Bauman*, 571 U.S. 117, 117 (2014). New York's long-arm statute CPLR § 302(a) permits exercises of jurisdiction over a non-domiciliary who, as to causes of action arising from any of the acts enumerated below, in person or through an agent:

> "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause for defamation of character arising from the act, if he
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives a substantial revenue from goods used or consumed or services rendered in the state, or
>> (ii) expects or should reasonably expect the act to have the consequences in the state and derives substantial revenue from interstate or international commerce; or
> (4) owns, uses or possess any real property situated within the state."

NY CPLR §§ 302(a)(1)-(4). The subsequent due process analysis considers whether the plaintiff sufficiently alleges "(1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168-69 (2d Cir. 2015) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)) (internal quotation marks omitted).

### a. Defendants Alkemi & Breen

---

[1] Plaintiffs do not argue and this Court has no reason to believe that Defendants are subject to general jurisdiction in the forum state. As such, only a potential exercise of specific personal jurisdiction is considered.

The Amended Complaint avers that an exercise of personal jurisdiction is appropriate against Defendants Alkemi and Breen under NY CPLR § 302(a)(1), (2), (3)(i), and (3)(ii).

### i. § 302(a)(1) Jurisdiction

As to § 302(a)(1), Plaintiff alleges that Defendants Alkemi and Breen's "solicited and advertised business" and "marketed and sold products and services in this State and District" through "the operation of one or more interactive websites" such that an exercise of jurisdiction would be appropriate. AC at ¶ 12. While Plaintiff alleges that Defendants Alkemi and Breen operated a website on which they hosted and facilitated the transfer of ALK tokens, that website and its associated advertisements, marketing, and transactions do not form the basis of this lawsuit. Plaintiff does not allege anywhere in the Amended Complaint that they were solicited through or interacted at all with Defendants' website. Therefore, the contents of the Defendant's website are irrelevant to Plaintiff's claims as currently articulated. *See Raad v. Bank Audi S.A.L.*, No. 1:20-cv-11101 (MKV), 2024 U.S. Dist. LEXIS 38823, at *12 (S.D.N.Y. Mar. 5, 2024) (noting that an asserted claim "must arise from that business activity" which forms the basis of an assertion of jurisdiction under § 302(a)(1) in order to succeed) (citing *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).

Nevertheless, the Amended Complaint's remaining allegations as to Defendants' solicitous conduct remain relevant. These allegations are that "Plaintiff was solicited by Defendant Alkemi in New York to make a substantial investment in Defendant Alkemi," that "Defendants Alkemi and Breen entered into negotiations whereby Plaintiff was to make the investment in Defendant Alkemi," and that "Defendants Alkemi and Breen represented to Plaintiff that the true value of the investment would be in the ALK tokens and not the capital shares of Defendant Alkemi." AC at ¶ 22. Plaintiff also states that Defendants Alkemi and

Breen discussed their plans on spending invested funds "[i]n a series of conference calls, meetings and presentations." *Id.* at ¶ 23; *see also id.* at ¶ 24 (discussing Defendant Alkemi and Breen's pitch deck and other materials on the ALK token's value).

An exercise of jurisdiction under § 302(a)(1) would be impermissible here. The relevant factors to be considered in determining whether an out-of-state defendant transacts business in New York considers:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation;
> (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship;
> (iii) what the choice-of-law clause is in any such contract; and
> (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Maranga v. Vira*, 386 F. Supp. 2d 299, 305-06 (S.D.N.Y. 2005) (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004)). The state long-arm is a "single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York." *Sandoval v. Abaco Club*, 507 F. Supp. 2d 312, 316 (S.D.N.Y. 2007) (quoting *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 818 N.Y.S.2d 164 (2006)). While "commercial actors may be subject to long-arm jurisdiction even when they have only used electronic and telephonic means," *id.*, such "communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its 'center of gravity' inside New York, into which a defendant 'projected himself.'" *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (quoting *Wilhelmshaven Acquisition Corp. v. Asher*, 810 F. Supp. 108, 112 (S.D.N.Y. 1993)). Courts applying § 302(a)(1) routinely find that telephonic negotiations involving non-domiciliary

defendants under contracts not containing New York choice of law terms for assets which have no relation to the forum state are insufficient. *Id.* at 308 ("The mere fact that some telephonic negotiations regarding the contract in this case were conducted while one of the parties to the contract was in New York does not suffice to make the contract, or the telephonic negotiation of it, a transaction of business in New York by the Defendants."). This Court comes to the same conclusion here as Plaintiff has not sufficiently pleaded any connection between the assets at issue here and the forum state. These alleged facts are indistinguishable from those present in the cases cited herein.

### ii. § 302(a)(2) Jurisdiction

Jurisdiction pursuant to § 302(a)(2) also does not exist here. Plaintiff seems to advance a conspiracy-theory of jurisdiction under § 302(a)(2) in their opposition papers. *See* Alkemi/Breen Opp. at 4-7. Whereas this section of the long-arm generally "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act," *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997) (internal citation omitted), personal jurisdiction over a co-conspirator defendant under an agency theory can exist where a plaintiff alleges "first, that the defendant was a part of a conspiracy involving overt acts in New York, and; second, that: (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant." *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 236 at 126 (2d Cir. 2023) (cleaned up).[2]

---

[2] The Court notes that the Amended Complaint contains no allegations that any Defendant committed any of the allegedly tortious acts in New York. Plaintiff states nowhere that any defendant conducted any allegedly offensive transfer of assets or facilitation thereof in the forum state. Plaintiff also does not claim that Defendant Alkemi's

Short of pleading sufficient grounds for jurisdiction, the Amended Complaint vacillates between impermissible group pleading and inadequate conclusory statements. Despite alleging that "[e]ach of the Defendants agreed in concert to commit . . . unlawful acts . . . and committed overt acts in furtherance thereof," Plaintiff at no point makes clear which specific Defendant acted as an agent for another or what overt acts were committed within the forum state in furtherance of the conspiracy. AC at ¶ 78. Elsewhere, Plaintiff's allegations as to Alkemi and Breen's "repeated, material and intentional misrepresentations to Plaintiff in New York" may have qualified as an overt act if the allegations were not inartfully group pleaded. *Id.* at ¶ 32; *see also id.* at ¶ 33 (containing similar allegations); *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 123 (2d Cir. 2021) (finding that repeat telephonic and electronic communications into the forum state in furtherance of the conspiracy were sufficient to establish jurisdiction). As currently presented, neither this Court nor defendants themselves can determine what communications are attributable to which Party and whether, if at all, an agency relationship existed between the two.

On agency, Plaintiff correctly notes that the central question when considering whether a corporate entity acted as the agent of an officer is "whether the out-of-state corporate officers were primary actors in the transaction in New York that gave rise to the litigation." *New York v. Mt. Tobacco Co.*, No. 12-cv-6276(ADS)(SIL), 2015 U.S. Dist. LEXIS 24966, at *5 (E.D.N.Y. Feb. 26, 2015) (citation omitted). Yet, the factual assertions Plaintiff makes in support of their contention that Breen drove the transaction exclusively take the form of conduct which Alkemi and Breen allegedly both undertook. *See, e.g.*, AC at ¶ 22 ("Defendants Alkemi and Breen entered into negotiations"); *id.* at ¶ 23 ("Defendants Alkemi and Breen represented"); *id.* at ¶ 24

---

alleged shuttering of development on the ALK Protocol occurred within, involved, or shared any nexus with the forum state.

("Defendants Alkemi and Breen presented Plaintiff with a pitch deck"); *id.* at ¶ 29 ("Defendants then funneled Plaintiff's investment"); *id.* at ¶ 32 ("Defendants Alkemi and Breen made repeated material and intentional misrepresentations to Plaintiff"); *id.* at ¶ 33 ("Defendants Alkemi and Breen continued to intentionally mispresent the status of the deal"). While Breen's involvement in negotiations and material misstatements, if true, are certainly not irrelevant to the analysis, such allegations on their own are not sufficient to establish an agency relationship. *See, e.g.*, *Champion Motor Grp. v. Visone Corvette*, 992 F. Supp. 203, 206 (E.D.N.Y. 1998) (finding agency jurisdiction against corporate officer based upon, *inter alia*, sworn affidavits establishing officer's involvement in transaction negotiations, in-person attendance at routine meetings in the forum state, and officer's involvement in on-site operations); *Nelson A. Taylor Co. v. Tech. Dynamics Grp.*, 95-CV-0431, 1997 U.S. Dist. LEXIS 4606, at *14-*15 (N.D.N.Y. Apr. 7, 1997) (doing the same where it was alleged that the corporate officer negotiated and signed the agreement at issue, directly controlled all interactions with plaintiff, and authored all correspondences with plaintiff); *Basquiat v. Kemper Snowboards*, 96 Civ. 0185 (LAP), 1997 U.S. Dist. LEXIS 12653, at *8-*9 (S.D.N.Y. Aug. 20, 1997) (doing the same as against an officer who, despite never traveling to the forum state, was alleged to have been directly in charge of distribution of the infringing chattel in New York).

### iii.  § 302(a)(3) Jurisdiction

Because the Amended Complaint does not make clear which subsection of § 302(a)(3) Plaintiff is bringing their claims under, the Court will consider jurisdiction under both frameworks. Under both subsections, a complaining plaintiff must establish that the defendant committed a tortious act outside New York which caused injury to persons or property within the state. CPLR § 302(a)(3). Under subsection (i), Plaintiff must establish that Defendants

"regularly do[] or solicit[] business, or engage[] in any other persistent code of conduct, or derive[] substantial revenue from goods used or consumed or services rendered in the state. *Id.* at § 302(a)(3)(i). For subsection (ii), Defendants must "expect[] or should reasonably expect[] the act to have consequences in the state and derive[] substantial revenue from interstate or international commerce."

Even assuming that Plaintiff has adequately pleaded tortious conduct without New York that has caused injury within the state, the Amended Complaint contains no allegations as to whether any of the Defendants regularly solicit or do business or have a course of conduct within the state. While the SAFE sought and successfully obtained the sale of $200,000 worth of corporate shares, there is no evidence that the corporate asset had any ties to the state. *See Lipson v. Birch*, 46 F. Supp. 3d 206, 219 (E.D.N.Y. 2014) (denying jurisdiction even where defendants were paid in excess of $240,000 for services rendered outside New York); *see also id.* at 219-220 ("The fact that [defendant] e-mailed the Plaintiff, and cc-ed [co-defendant], while the Plaintiff resided in New York does not, without more, establish a basis for personal jurisdiction over [defendants] under § 302(a)(3)(i).").

Similarly, the Amended Complaint fails to establish that Defendants had a reasonable basis to expect their actions to have consequences in New York. While "a party sending fraudulent misrepresentations into New York should reasonably expect the act to have consequences in New York," *Related Cos., L.P. v. Ruthling*, No. 17-cv-4175, 2017 U.S. Dist. LEXIS 207857, at *14 (S.D.N.Y. Dec. 15, 2017), "[f]oreseeability must be coupled with evidence of a purposeful New York affiliation . . . to the extent that [a defendant] would reasonably anticipate being haled into a New York court." *Lipson*, 46 F. Supp. 3d at 219 (citing *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 at 467-68 (S.D.N.Y. 2008)).

Plaintiffs predicating jurisdiction on a defendant's electronic transmission of material misstatements into the state have been successful where the content of such messages establish that the defendant "knew and intended his actions to have consequences in New York." *Related Cos., L.P. v. Ruthling*, No. 17-cv-4175, 2017 U.S. Dist. LEXIS 207857, at *14 (S.D.N.Y. Dec. 15, 2017); *see generally id.* (granting jurisdiction based upon documentary evidence of a defendant's material misstatements to the plaintiff); *Zu Fei Huang v. Kim Dang Nguyen*, No. 19 CV 3309 (ENV)(LB), 2020 U.S. Dist. LEXIS 24658, at *15 (E.D.N.Y. Feb. 11, 2020) (denying jurisdiction where a defendant was "not even included in the [offending] communications" and "fail[ed] to establish that [the defendant] knew" of the communication's tortious nature). Neither the Amended Complaint nor any of Plaintiff's oppositions contain any similar evidence establishing Defendants' knowledge or intent.

And even still, Plaintiff's mere conclusory allegations as to Defendants' substantial revenue from interstate commerce are also insufficient. *See id.* ("[N]o personal jurisdiction pursuant to Section 302(a)(3) in part because there is no evidence in the record that defendants regularly engaged in or solicited business in New York or derived substantial revenue from the state.") (citing *M&M Packaging, Inc. v. Kole*, 2005 U.S. Dist. LEXIS 48323, at *8 (S.D.N.Y. July 27, 2005)) (cleaned up).

### iv. Abuse of the Corporate Form

"In New York, the individual who owns a corporation is generally not subject to personal jurisdiction as a result of the corporation's activities unless the corporate veil can be pierced". *Ontel Prods. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) (cleaned up). "The standard for piercing the corporate veil for purposes of personal jurisdiction . . . is 'a less stringent one'" than is employed for liability purposes. *Cardell Fin. Corp. v. Suchodolski*

*Assocs.*, 2012 U.S. Dist. LEXIS 188295, at *48 (S.D.N.Y. July 17, 2012) (citing *Miramax Film Corp. v. Abraham*, No. 01 CV 5202 (GBD), 2003 U.S. Dist. LEXIS 21346, at *20 (S.D.N.Y. Nov. 24, 2003)). "If a corporation is merely a shell, the corporate veil may be pierced to impute jurisdiction even without a showing that the shell was used to perpetrate a fraud." *Miramax Film Corp.* 2003 U.S. Dist. LEXIS 21346, at *20-21. Courts conducting this alter-ego inquiry consider multiple factors, including "(1) the failure to observe corporate formalities; (2) whether the corporation is undercapitalized; (3) any intermingling of person and corporate funds; (4) the sharing of common office space or telephone numbers; (5) an overlap of ownership, directors, officers or other personnel; and (6) whether the corporation has been used to perpetrate a wrongful act against the plaintiff." *Cardell Fin. Corp*, 2012 U.S. Dist. LEXIS 118295 at *50. No single factor is outcome determinative and the principal question is whether the corporate entity "is being used by the alleged dominating entity to advance its own personal interests as oppose[d] to furthering the corporate ends." *Miramax Film Corp*, 2003 U.S. Dist. LEXIS 21346 at *21. When considering the temporal scope of facts underlying assertions of alter-ego jurisdiction, Courts have relied "both on recent facts as well as facts reaching as far back as the incorporation of the relevant entity." *Cardell Fin. Corp.* 2012 U.S. Dist. LEXIS 188295, at *54.

The only evidence which Plaintiff advances in support of the argument that Defendant Breen abused the corporate form is that Breen was a common executive in both Alkemi AI Inc. and Arkana Capital, that he transferred funds from the former corporate entity into the latter, and that both corporate entities were involved in the alleged fraudulent scheme. Plaintiff presents no allegations as to either company's observation of corporate formalities under the applicable laws of their countries of incorporation. *See Abu-Nassar v. Elders Futures*, No. 88 Civ. 7906 (PKL), 1991 U.S. Dist. LEXIS 3794, at *41 n.17 (S.D.N.Y. Mar. 28, 1991). Neither does Plaintiff

present evidence of either corporation's undercapitalization, the intermingling of funds, or the existence of shared office space or phone numbers.  Most concerningly, Defendants point out and Plaintiff acknowledges that Defendant Arkana *was not even formed* until December 2021, years after Breen and Alkemi's initial solicitation of Plaintiff's funds and months after the alleged termination of the Alkemi Protocol.  *See* Alkemi Mot. at 16; Alkemi Opp. at 7.  Under the totality of the circumstances these allegations are insufficient to make out that either corporate entity was merely a corporate shell for Defendant Breen.

### a. Defendant Arkana

Whereas the Amended Complaint obfuscates the allegation, Plaintiff's opposition filing makes clear that it claims jurisdiction pursuant to § 302(a)(3)(ii).  Plaintiff again asserts threadbare conclusory allegations as to Arkana's derivation of substantial revenue from interstate or international commerce.  The Amended Complaint merely states that Defendant Arkana "deriv[es] substantial revenue through interstate and international commerce" without any facts to support such an assertion.  Therefore, jurisdiction under this subsection is denied.

Jurisdiction under Plaintiff's alternative conspiracy, agency, and corporate form theories are also denied as to Arkana with particular force given the aforementioned temporal incorporation issues.

### II.    Jurisdictional Discovery and Leave to Amend

"Even without a prima facie showing of jurisdiction, the Court has 'discretion to order further discovery on the jurisdictional issue, provided that the plaintiff[ ] make[s] a threshold showing of jurisdiction and establishes that [its] position is not frivolous.'" *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Nos. 08-01789 (CGM), 12-01576 (CGM), 2024 Bankr. LEXIS 1299, at *15-16 (Bankr. S.D.N.Y. June 4, 2024) (citing *Fairfield Sentry Ltd. v.*

*HSBC Sec. Servs. (Luxembourg) S.A.*, No. 21-cv-10316 (LAP), 2022 U.S. Dist. LEXIS 157708, at *23 (S.D.N.Y. Aug. 31, 2022)).  What's more, "when a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 605 (S.D.N.Y. 1998).  While, as currently pleaded, Plaintiff has not made the threshold showing, it does not appear impossible that Plaintiff might make out such a showing with further amendment.  As such, Defendants' motion is granted without prejudice.  Plaintiff is hereby **ORDERED** to file an amended complaint within 21 days of entry of this Order.

**SO ORDERED.**

Dated:   **September 27, 2024**
         **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**